UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| SHARON ZUSCHLAG, : | |
| : | Hon. Joseph H. Rodriguez |
| Plaintiff, : | |
| : | Civil Action No. 18-cv-1949 |
| v. : | |
| : | |
| COMMISSIONER OF THE : | |
| SOCIAL SECURITY : | **OPINION** |
| ADMINISTRATION, : | |
| : | |
| Defendant. : | |

This matter comes before the Court upon an appeal by Plaintiff Sharon H. Zuschlag (hereinafter, "Plaintiff" or "Zuschlag") of the final determination of the Commissioner of the Social Security Administration's (hereinafter, "Defendant" or "the Commissioner") denial of her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act ("SSA") for the period between October 12, 2014 to January 25, 2013, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons set forth below, the Court vacates the decision of the Administrative Law Judge ("ALJ") and remands for proceedings consistent with this Opinion.

## I. BACKGROUND

The Court recites only the facts that are necessary to its determination on appeal, which is narrow.[1]

---

[1] Plaintiff's medical history is extensive, and the record in this case is voluminous. Since this Court decides this matter on a narrow basis, namely whether the ALJ erred in its determinations and denial of benefits to Plaintiff, a detailed recitation of such history is not necessary here.

1

### a. Procedural History

On January 25, 2013, Plaintiff filed an application for disability insurance ("DIB") and SSI benefits, alleging a disability onset date of October 14, 2012. (AR 103). Her application was denied on July 23, 2013. (Id. at 89). Plaintiff then filed a Request for Reconsideration, which was timely submitted on July 26, 2013. (Id. at 145-150). The claim was denied again on March 3, 2014. (Id. at 105-117). On April 24, 2014, Zuschlag requested a hearing before an ALJ. (Id. at 160-164). Plaintiff appeared for a hearing in the Pennsauken, NJ office before the Honorable Marguerite Toland, ALJ, on May 12, 2016. (Id. at 43-78). On November 23, 2016, The ALJ issued an Unfavorable decision denying benefits to Plaintiff. (Id. at 12-43).

Plaintiff then filed a Request for Review of Hearing Decision with the Appeals Council on February 6, 2017. (Id. at 212-214). The Council issued an Order, dated January 4, 2018, denying the Request for Review. (Id. at 1). Plaintiff then commenced the present action, requesting judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). [Dkt. No. 9 p. 1].

### b. Brief Factual Background

Plaintiff, Sharon Zuschlag, was born on July 26, 1972. (A.R. 35). Zuschlag was 40 years old on the alleged disability onset date ("AOD") of October 14, 2012. (Id. at 35). At the time of her hearing before the ALJ, Plaintiff was 43 years old, which is classified as a "younger person" under the Commissioner's regulations. [Pl. Br. P. 2]. She attests to last working on October 14, 2012 (A.R. 25). Plaintiff has a high school level education having earned a General Equivalency Degree (GED). (Id.). She was not enrolled in special education classes while she was in school. (Id.). Her relevant work history includes time as a cashier and a server and a brief enrollment in cosmetology school. (Id.).

Zuschlag currently suffers from a number of impairments, both physical and mental, which include: depressive disorder, anxiety disorder, degenerative disc disease of the cervical and lumbar spine, obesity, Baker's cyst, arthritis of the right knee, rheumatoid arthritis, inflammatory arthritis, fibromyalgia, migraines and hand deficits with pain along with their associated functional limitations. [Pl. Br. p. 2]. Plaintiff first saw a rheumatologist in 2012 when she began the onset of neck and back pain. (A.R. 55). She testified to diagnoses of fibromyalgia and rheumatoid arthritis, the severity of which was contested by the ALJ during Plaintiff's hearing. (Id. at 56; 17). Plaintiff described her various pains as "sharp, shooting, stabbing, and sometimes I would get a burning, tingling." (Id. at 60). She testified that she "rated her pain as an 8/10, even with medication." (Id.). Plaintiff takes medication to help alleviate the pain, but contests that it is not always effective, and causes her to experience several negative side-effects. (Id. at 58).

According to her Adult Function Report filed on February 10, 2013, (A.R. 265-273), Plaintiff explained that she was in constant pain, and "needed the help of her husband to take care of their then-3-year-old daughter." (Id. at 266-267). She also experiences difficulty sleeping, "reaching to dress, care for her hair, or wipe herself after using the toilet." (Id. at 267). In addition, she expressed difficulty with bending, standing, reaching, kneeling, memory, concentration and completing tasks. (Id. at 270-271). Plaintiff agreed that she was able to "walk, stand, or sit for a half hour, and bend her knees 'for a second.'" (Id. at 271). As for her endurance, Plaintiff alleged that she "thought she could walk 200 feet before having to rest for five minutes." (Id.). For these reasons, Plaintiff testified that needs help performing household chores, and that she could only attempt chores for ten minutes before needing a break and is unable to lift

items in excess of five pounds. (Id. at 62, 268; 270). Further, she is only able to cook in 20-minute increments, with aid. (Id. at 268). She testified that her boyfriend, sister, and daughter all help take care of her at home. (Id. at 63). Plaintiff is also unable to crochet as frequently as she would like due to pain in her hands, which was a hobby of hers prior to the alleged disability onset date. (Id. at 270).

Plaintiff argues on appeal that the ALJ erred by (1) formulating an RFC that is incompatible with the totality of the testimony of the Vocational Expert; (2) failing to find Plaintiff's fibromyalgia to be a severe impairment, and compounding that error by failing to include limitations secondary to Plaintiff's fibromyalgia in the RFC; and (3) misevaluating the treating source opinion and the functional capacity evaluation. [Dkt. No. 9]. This court will consider the validity of these claims in the context of the testimony provided below.

### c. Testimony of Vocational Expert

At Plaintiff's hearing, the ALJ allowed testimony from an independent vocational expert, James H. Earhart (hereinafter "Mr. Earhart" or "Earhart"), to better assess her capacity for employment. (A.R. 69). Mr. Earhart testified to Plaintiff's ability to perform her past relevant work, as well as calculate alternative positions that aligned with her limitations. (Id. at 69-76). He provided a description of Plaintiff's past relevant work history derived from the Dictionary of Occupational Titles ("DOT"), focusing on her jobs as waitress, gas and oil servicer, self-service attendant, and cashier clerk. (Id. at 70-71). During his interview with the ALJ, Earhart testified as follows:

> Q  Please assume this individual can perform sedentary work as defined under the DOT. This individual can sit up to six hours per day, but no more than one hour at a time. She would need to stand and/or shift positions for up to five minutes every hour, while remaining on-task…This individual would be limited to low-stress work and I'll define that as

4

> routine work, having no fast production rate pace or strict production quotas. And the low stress work would also be unskilled in nature. Based on those limitations, could this individual perform any of Claimant's past work?
>
> . . .
>
> A  No.
>
> . . .
>
> Q  And are there other jobs within that hypothetical that this individual could perform?
>
> . . .
>
> A  Yes, I think so. I think that would allow for, for example, order clerk, DOT Code: 209.567-014, unskilled, sedentary work, SVP: 2, there exists about 200,000 in the national economy, I would suggest cashier, parking lot, 211.462-010...Unskilled, SVP: 2, about 220,000 in the national economy. Charge account clerk, 205.367-014, about 10,000 in the national economy.
>
> . . .
>
> Q  Okay. Thank you. And Mr. Earhart, what would be the employers [sic] tolerance for being off-task at those two [sic] jobs?
>
> . . .
>
> A  Now that's based on my experience, not based on the *Dictionary* or their associate, but in my experience, any more than 15 percent in addition to normal breaks is preclusive of competitive employment.
>
> . . .
>
> Q  Okay, so if the individual was off-task, let's say, 10 percent of the workday, he or she could still perform those three jobs, but if they were routinely off-task, let's say 16 to 20 percent of the day, they couldn't perform any of those jobs?
>
> . . .
>
> A  That's correct, Your Honor. That's my opinion, again.

(Id. at 71-72). Mr. Earhart was then questioned by Plaintiff's attorney, during which he testified:

> Q  ...you stated that 15 percent was the threshold, so to speak, for being off-task. If an individual were off task less than that 15 percent, you know, five or ten percent, but for that period of time, they were abandoning their workstation, would that have an effect on their ability to maintain employment?
>
> . . .
>
> A  Yes, I think, yes, I think that would, abandoning your workstation for a moment, five minutes, give me some quantity, quality.
>
> . . .
>
> Q  Well let's start with 10 percent, so that would be six minutes out of every hour.
>
> . . .

5

>   A  No, that wouldn't be tolerated.
>   . . .
>   Q  Okay. And five percent would be roughly three minutes out of every hour.
>   . . .
>   A  No, walking away from your workstation is different than being off-task, I think. No that's, I should point out that's not in the *Dictionary*.
>   . . .
>   Q  Okay. Along those same lines, well let me ask this first, what breaks would, or are unskilled workers typically allotted during the day?
>   . . .
>   A  Again in my experience, the, there's five breaks. Three regularly scheduled coffee, meal breaks and then two other, more flexible bathroom breaks.
>   . . .
>   Q  Okay, and how long are those breaks typically?
>   . . .
>   A  Fifteen, fifteen, 30 and 10, 10.
>   . . .
>   Q  …So if an individual needed an additional say 20-minute break, would that have an effect on that?
>   . . .
>   A  Yeah, that's difficult for competitive employment. But yeah.
>   . . .
>   Q  Now if an individual were only able to sit for say 10 to 15 minutes and then would have to stand and shift positions for another five minutes. Would that have any effect on the ability to do those jobs?
>   . . .
>   A  It, the jobs that I tried to identify, we're talking about assisting out from jump, I think you can do those jobs whether you're sitting or standing.

(Id. at 74-76).

### d. The ALJ's Decision

The ALJ applied the requisite five-step analysis, ultimately concluding that Plaintiff was not "disabled." At Step 1, the ALJ determined that the Plaintiff has not engaged in substantial gainful activity since October 14, 2o12, the alleged onset date. (Id. at 17). Next, at Step 2, the ALJ found that Plaintiff had the following severe impairments: depressive disorder, anxiety disorder, degenerative disc disease of the cervical and lumbar spine, obesity, Baker's cyst and arthritis of the right knee. (Id.). At

6

the Third Step, the ALJ determined that the Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Id. at 19). The ALJ then moved on to Step 4 of the analysis, and determined that Plaintiff has the RFC to perform:

> [A] full range of sedentary work as defined in the Dictionary of Occupational Titles and in 20 CFR 404.1567(a) and 416.967(a), except the claimant would be able to sit for up to six hours in an 8-hour day, but no more than one hour at a time. She would need to stand/shift positions for up to 5 minutes every hour while remaining on task. The claimant can occasionally stoop and do overhead lifting and reaching. She can frequently handle. The claimant would be limited to low stress work, defined as unskilled, routine work, with no fast production rate pace or strict production quotas. She would be off-task no more than 10 percent of the workday due to her symptoms, in addition to normal breaks.

(Id. at 22). In making these findings, the ALJ looked to the Plaintiff's testimony, the Adult Function Report completed by Plaintiff, and the objective medical evidence and other evidence in accordance with the requirements of 20 CFR 404.1529 and 416.929 and SSR 96-4p. (Id.). The ALJ also considered opinion evidence in accordance with the requirements of 20 CRR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.[2] (Id.).

---

[2] The ALJ specifically referenced: Plaintiff's "Disability Report-Adult" questionnaire; Plaintiff's "Function Report-Adult" questionnaire dated February 10, 2013; a subsequent "Function Report-Adult" questionnaire completed on December 6, 2013; a "Disability Report-Appeals" questionnaire submitted on July 30, 2013; diagnostic studies including an M RI of Plaintiff's cervical spine, conducted on October 4, 2012, an MRI of Plaintiff's lumbar spine conducted on April 18, 2014, another MRI of Plaintiff's lumbar spine on November 2, 2015, an EMG/nerve conduction study of August 29, 2013, an EMG study of Plaintiff's right leg conducted on October 18, 2013, and x-rays of Plaintiff's right knee; an office treatment record from Southern Jersey Family Medical Centers Inc. and a follow-up with Dr. Asha Vijayakumar on November 26, 2013; an emergency room record of January 8, 2013; subsequent treatment record from Southern Jersey Family Medical Centers Inc. on February 15, 2013; pain management treatment with Dr. Niti Cooper; an orthopedic consultative examination with Dr. Serna M. Satcher on June 10, 2013; EMG/nerve conduction studies with Dr. Merrick J. Wetzier on October 31, 2013; an examination at Virtua Pain & Spine on October 3, 2013 with D. Benjamin J. Duckles; a review of an additional MRI by Dr. Jonathan Bussey with Copper [sic] Neurological Institute on December 23, 2013; neurological follow-up

The ALJ concluded that Plaintiff was unable to perform any past relevant work. (Id. at 34). This determination was based largely on the testimony provided by Mr. Earhart, the VE, who indicated that Plaintiff had past work as a waitress, which is semi-skilled, light work with an Specific Vocational Preparation (SVP) of 3; gas and oil servicer, which is unskilled, medium work with an SVP of 2; and self-service attendant which is unskilled, light work with an SVP of 2. (Id. at 34-35). The ALJ further determined that Plaintiff had an assessed residual functional capacity for unskilled, sedentary jobs, which, based on the testimony of the VE, is incompatible with her past relevant work, which involved at least light work.[3] (Id. at 35). Therefore, based on the testimony and evidence considered, the ALJ determined that Plaintiff was unable to engage in her past relevant work. (Id.).

The ALJ then provided, alternatively, that transferability of job skills is not material to the determination of disability, since the final determination is made using the Medical-Vocational Rules as a framework. (Id.). Under this framework, the ALJ concluded that based on a consideration of Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the

---

examinations on November 29, 2013 by Dr. Andrew J. McGarry and on February 12, 2014 with Dr. Neil M. Masangkay; a consultation for joint pain on April 16, 2014 with Dr. Joshua B. Sundhar; consultation with pain specialist Dr. Morris Antebi on January 20, 2015; examinations at the North American Spine Center on May 19, 2015 through April 20, 2016; multiple assessments conducted by Plaintiff's primary care physician, Dr. Maynard Holgado; psychiatric assessments concerning Plaintiff's mental impairments by Dr. J. Theodore Brown; a functional capacity evaluation conducted on June 2, 2015 by Mr. Chris Mammola; and "Functional Report Adult-Third Party" questionnaires completed on February 14, 2013 and August 11, 2013 by Mr. Bruce S. Diller, boyfriend of Plaintiff and a questionnaire completed on August 10, 2013 by Ms. Karen Snyder, sister of Plaintiff. (Id. at 23-34).

[3] The ALJ then sets forth Mr. Earhart's testimony regarding the job positions that the hypothetical individual could perform with corresponding DOT codes, as well as the prevalence in which they exist in the national economy. (Id. at 36-37).

national economy that Plaintiff can perform. (Id.). Thus, the ALJ denied Plaintiff's application under a finding of "not disabled." (Id. at 37).

## II. DISABILITY DEFINED

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); See Jenkins v. Comm'r of Soc. Sec., 192 F. App'x 113, 114 (3d Cir. 2006) (citing Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir.1999)). The Act further states that:

> an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The Act defines "work which exists in the national economy" to mean "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." Id.

The Commissioner employs a five-step procedure set forth by the Social Security Administration in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4) to evaluate a claimant's disability. Hess v. Comm'r Soc. Sec., 931 F.3d 198, 201 (3d Cir. 2019); see also Plummer, 186 F.3d at 428. The burden of proof is on the claimant at all steps except step five, where the burden is on the Commissioner. Hess v. Comm'r Soc. Sec., 931 F.3d at 201 (citing Smith v. Comm'r of Soc. Sec., 631 F.3d 632, 634 (3d Cir. 2010).

9

At Step 1, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity." Hess v. Comm'r Soc. Sec., 931 F.3d at 201. (citing 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i)); see also Plummer, 186 F.3d at 428. If so, the disability claim will be denied. Id. see also Bowen v. Yuckert, 482 U.S. 137, 140 (1987). Otherwise, the ALJ moves on to step two.

Step 2 requires the Commissioner to consider whether the claimant is suffering from a "severe medically determinable physical impairment" that meets certain regulatory requirements. Hess v. Comm'r Soc. Sec., 931 F.3d at 201 (citing 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii)). According to the Act, a "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" Id. §§ 404.1520(c), 416.920(c). If the claimant fails to make this showing, her claim will be denied. Id. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has such an impairment, the ALJ moves on to step three.

At Step 3, the Commissioner "decides whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations[.]" Id. (citing Smith, 631 F.3d at 634). If the claimant's impairments do, she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If they do not, the ALJ moves on to steps four and five.

At Step 4, the Commissioner considers whether the claimant possesses the "residual functional capacity" ("RFC") to perform her past relevant work. Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The plaintiff bears the burden of proving her inability to return to her past relevant work. Id. Step Four includes the following three sub steps:

> (I) "the ALJ must make specific findings of fact as to the claimant's residual functional capacity"; (ii) "the ALJ must make findings of the physical and mental demands of the claimant's past relevant work"; and (iii) "the ALJ must compare the residual functional capacity to perform past relevant work to determine whether the claimant has the level of capability needed to perform the past relevant work."

Jenkins v. Comm'r of Soc. Sec., 192 F. App'x at 115 (citing Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 120 (3d Cir. 2000)). If the claimant meets the burden of proof, the burden shifts to the Commissioner for the fifth step. Id.

At Step 5, the Commissioner examines whether the claimant "can make an adjustment to other work[,]" considering her "[RFC,] … age, education, and work experience[.]" Hess v. Comm'r Soc. Sec., 931 F.3d at 202 (citing §§ 404.1520(a)(4)(v), 416.920(a)(4)(v)). The ALJ must show that there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with the claimant's medical impairments, age, education, past work experience, and RFC. Kirby v. Comm'r of Soc. Sec., No. CV 16-5159 (RMB), 2017 WL 4330361, at *1 (D.N.J. Sept. 29, 2017). The Commissioner must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled. Id. See 20 C.F.R.§ 404.1523. This examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." Id. (citing Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984)). If the claimant can make an adjustment to other work, she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If she cannot, she is disabled. Id.

### III.   STANDARD OF REVIEW

The Court has jurisdiction to review the ALJ's final decision pursuant to 42 U.S.C. § 405(g). On a review of a final decision of the Commissioner , a district court

"shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); see Matthews v. Apfel, 239 F.3d 589, 592 (3d Cir. 2001). The Commissioner's decisions regarding questions of fact are deemed conclusive on a reviewing court if supported by "substantial evidence in the record." 42 U.S.C. § 405(g); see Lindemeyer v. Saul, No. CV 19-8781 (FLW), 2020 WL 3397287, at *6 (D.N.J. June 19, 2020) (citing Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000)).

"Substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate." Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir.2002) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)). It consists of more than a mere scintilla of evidence but may be less than a preponderance of the evidence. Burns, 312 F.3d at 118 (citing Plummer, 186 F.3d at 427). This test is deferential, and the Commissioner's decision will not be disturbed if it is supported by substantial evidence, even if the Court acting de novo might have reached a different conclusion. Jones v. Comm'r of Soc. Sec., 275 F. App'x 166 (3d Cir. 2008). See Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") see also Burns, 312 F.3d at 118 ("we are not permitted to weigh the evidence or substitute our own conclusions for that of the fact-finder.") Thus, substantial evidence supports the Commissioner's determination where a "reasonable mind might accept the relevant evidence as adequate" to support the conclusion reached by the Commissioner. Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).

In order to properly facilitate this Court's review, the ALJ must set out a specific factual basis for each finding. See Baerga v. Richardson, 500 F.2d 309 (3d Cir. 1974). Additionally, the ALJ "must adequately explain in the record [the] reasons for rejecting or discrediting competent evidence," Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)), and must review all pertinent medical and nonmedical evidence "and explain his conciliations and rejections." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000). However, the ALJ need not discuss "every tidbit of evidence included in the record." Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004). Rather, the ALJ must set forth sufficient findings to satisfy the reviewing court that the ALJ arrived at a decision through application of the proper legal standards, and upon a complete review of the relevant factual record. See Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983).

If faced with conflicting evidence in the record, the Commissioner "must adequately explain in the record his reason for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987); see also Guerrero v. Comm'r of Soc. Sec., No. 05-1709, 2006 WL 1722356, at *3 (D.N.J. June 19, 2006) ("The ALJ's responsibility is to analyze all the evidence and to provide adequate explanations when disregarding portions of it.") aff'd, 249 F. App'x 289 (3d Cir. 2007). However, the ALJ need not "engage in a comprehensive analysis when explaining why probative evidence is being rejected." Davis v. Comm'r of Soc. Sec., No. CIV.A. 11-3036 MLC, 2012 WL 2594354, at *5 (D.N.J. July 5, 2012) (citing Cotter, 650 F.2d at 482). Rather, a short sentence or paragraph explaining the basis upon which the ALJ is rejecting evidence will suffice. Id. Without an indication as to what evidence the ALJ considered or rejected, a court "cannot tell if significant probative evidence was credited

13

or simply ignored." Davis v. Comm'r of Soc. Sec., WL 2594354 at *5. The Third Circuit further holds that sufficient development of the record and explanation of findings promotes meaningful review of the testimony. Jones v. Barnhart, 364 F.3d 501, 5050 (3d Cir. 2004); see also Fargnoli v. Massanari, 247 F.3d at 42-43 ("When there is conflicting probative evidence in the record, we recognize a particularly acute need for an explanation behind the ALJ's conclusions, and will vacate or remand a case where such an explanation is not provided.")

## IV.     ANALYSIS

Plaintiff argues that the ALJ erred by (1) formulating an RFC that is incompatible with the totality of the testimony of the Vocational Expert; (2) failing to find Plaintiff's fibromyalgia to be a severe impairment, and compounding that error by failing to include limitations secondary to Plaintiff's fibromyalgia in the RFC; and (3) misevaluating the treating source opinion and the functional capacity evaluation. [Dkt. No. 9]. This court will address Plaintiff's first argument, whether the ALJ's determination of RFC is incompatible with the totality of the testimony of the vocational expert, below.

Plaintiff argues that the ALJ erred in formulating an RFC that is incompatible with the totality of the testimony of the VE [Dkt. No. 9]. Plaintiff contends that there is a clear discrepancy in the VE's testimony at the hearing, and that, without clarification, the VE's testimony "cannot constitute 'substantial evidence,' creating an issue that must be resolved on remand." [Pl. Br. p. 14]. Because the Court agrees that there is a discrepancy in the testimony of the VE, the Court will remand for further proceedings.

The Third Circuit has held that "where there is conflicting probative evidence in the record, we recognize a particularly acute need for an explanation of the reasoning behind the ALJ's conclusions, and will vacate or remand a case where such an explanation is not provided." Fargnoli v. Massanari, 247 F.3d at 42-43 (citing Cotter v. Harris, 642 F.2d at 706). The ALJ has a duty to accurately convey to the VE all of a claimant's credibly established limitations, such that an accurate and complete hypothetical can be posed to the VE during the hearing before the ALJ. Rutherford v. Barnhart, 399 F. 3d 546, 553-54 (3d Cir. 2005) (citing Plummer, 186 F.3d at 431). A hypothetical that does not include all of the plaintiff's impairments is deficient. Davis v. Comm'r of Soc. Sec., WL 2594354 at *11 (citing Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987)). This rule applies solely to "every limitation established by the physical evidence." Plummer, 186 F.3d at 431.

In Kirby v. Commissioner of Social Security, the district court remanded the matter to the ALJ for failure to resolve an apparent conflict in the VE's hearing testimony. Kirby v. Comm'r of Soc. Sec., WL 4330361, at *6. The court reasoned that "a vocational expert's response to an inaccurate or incomplete hypothetical cannot constitute substantial evidence." Id. (citing Chrupcala v. Heckler, 829 F.2d at 1276). Like Zuschlag, the plaintiff in Kirby was 40 years old on the AOD. Id. at 5. She suffers from several impairments, including but not limited to generalized anxiety, depression, insomnia, neck, back, shoulder and hip pain. Id. at 6. The ALJ determined that the plaintiff had the RFC to perform her past relevant work as a typesetter, along with other sedentary, routine work existing in the national economy. Id. at 7-11. Thus, the plaintiff's application for DIB was denied, and the ALJ issued a finding of "not disabled." Id. at 11.

The plaintiff in <u>Kirby</u> contested on appeal that the ALJ's hypothetical posed to the VE at Steps 4 and 5 of the inquiry did not clearly represent all of plaintiff's impairments. <u>Id.</u> As a result, the plaintiff argued that the time she would likely need to spend off-task at work was not afforded proper weight by the VE in assessing RFC. <u>Id.</u> at 14-15. At the plaintiff's hearing, the VE reviewed the plaintiff's work history and listened to her testimony. <u>Id.</u> at 6, 14. During the VE's interview, a discrepancy in testimony arose when the ALJ asked the VE to establish threshold percentages of acceptable "time off-task" in order to formulate an accurate RFC. <u>Id.</u> The VE first provided that an employer's tolerance for time off-task was "somewhere between 10 and 15%." <u>Id.</u> at 7. The ALJ then asked whether 5% off-task is conducive to employment. <u>Id.</u> The VE answered in the affirmative, then the ALJ expounded upon the hypothetical. <u>Id.</u> at 8. The ALJ then added to the hypothetical "…what if the individual…was off-task…an additional half-hour every day just due to anxiety symptoms in addition to normal breaks. Could they do any of these jobs?" <u>Id.</u> The VE provided that the plaintiff could not. <u>Id.</u>

The district court, based on this testimony, found that the ALJ, in formulating this hypothetical, asked the VE two separate, contradictory questions. <u>Id.</u> The court was not convinced that the definition of "off-task" was clearly and uniformly established. <u>Id.</u> Since "the ALJ's hypothetical was incomplete, or at least unclear, the vocational expert's response thereto is not substantial evidence." <u>Id.</u> Thus, the court found that a remand to present the ALJ with a complete and accurate hypothetical upon which to render a decision in this matter was proper. <u>Id.</u>

Here, similar to the facts of <u>Kirby</u>, Plaintiff contests that the questions posed to the VE by the ALJ produced contradictory testimony surrounding how long an individual could be "off-task" in order to be considered for competitive employment.

16

(A.R. 69-77). In her decision, the ALJ formulated an RFC that limited the plaintiff to sedentary, unskilled work, based on the VE's initial testimony stating that "any more than 15% [off-task] in addition to normal breaks is preclusive of competitive employment." (Id. at 72). The ALJ and the VE seem to initially agree that in order for Plaintiff to be considered eligible for the three jobs the VE selected from the DOT, Plaintiff could not be "routinely off-task," which is considered to be "16-20 percent of the day," but that 10% of the workday off-task is acceptable. (Id.).

However, during the VE's questioning with Plaintiff's attorney, Counsel asked whether an individual could maintain employment "if [they] were off-task less than 15 percent, you know, five or ten percent, but for that period of time, they were abandoning their work station." (Id. at 75). Counsel then questioned, "...let's start with 10 percent, so that would be six minutes out of every hour." To which the VE responded, "No, that wouldn't be tolerated." (Id.). Further, the VE testified that "an additional 20-minute break" is "difficult for competitive employment." (Id. at 76). This contradicts the previous testimony the VE provided, since an additional 20-minute break beyond the normal breaks for an unskilled worker represents only about 5% of the workday spent "off-task," which was initially deemed acceptable by the VE for competitive employment.

Based on a review of this testimony, the Court finds that the ALJ failed to clarify the difference between time spent "off-task" versus time spent "away from one's workstation." (Id. at 75). The VE seemed to treat time spent off-task and time spent away from one's workstation as two separate hypotheticals and this contradiction in testimony was not properly clarified or addressed by the ALJ during the hearing. (Id.).

17

Because the ALJ's hypothetical was unclear, such that it produced conflicting testimony, the VE's response thereto does not constitute "substantial evidence."

Remand aligns with the Third Circuit's directive that there is an affirmative duty on the part of the ALJ to inquire about conflicts between VE testimony and the DOT. <u>Rutherford v. Barnhart</u>, 399 F.3d at 556; <u>See</u> <u>Policy Interpretation Ruling: Titles II & Xvi: Use of Vocational Expert & Vocational Specialist Evidence, & Other Reliable Occupational Info. in Disability Decisions</u>, SSR 00-4P (S.S.A. Dec. 4, 2000) (holding that before an ALJ can rely on VE evidence to support a disability determination, they must identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by the VE and information in the DOT).

Here, the VE testified that "…walking away from your workstation is different than being off-task, I think," and provided that this was his opinion, not contained in the DOT. (<u>Id.</u> at 75). While this is not a direct contradiction with information contained in the DOT, it furthers the Court's reasoning that remand is required to ensure that the VE's testimony was given with clarity and was consistent with a sufficient factual basis for all claims. Thus, the Court is compelled to remand this matter so that the ALJ may present the VE with a complete and accurate hypothetical, to which the VE can respond with clarity. On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation.

## V.      CONCLUSION

For the reasons set forth above, the Court will remand this matter to the ALJ for further consideration consistent with this opinion and Order. Moreover, because

remand is necessitated on this ground, the Court need not reach Plaintiff's remaining arguments.

An appropriate Order shall issue.

DATED: September 15, 2020

s/ Joseph H. Rodriguez  
Hon. Joseph H. Rodriguez,  
United States District Judge